## PORT WELLS MILL & LUMBER CO. v. CRAWFORD.

(Circuit Court of Appeals, Ninth Circuit.    May 18, 1920.)

### No. 3416.

1. Trial ⬡252(5)—Refusal of instruction in replevin as to conditional sale not error under evidence.

In replevin for a scow, the refusal of an instruction that, if there was a condition attached to a sale of the scow to defendant, the sale would not become absolute until the condition was fully discharged, *held* not error; the evidence raising no issue of a conditional sale, but showing either a sale or leasing of the scow to defendant, or a sale with the privilege extended to the seller of repurchasing it, dependent upon whether it was decided in another proceeding that a third party was entitled to it.

2. Appeal and error ⬡274(5)—Exception to instruction given held not to cover failure to submit question.

In replevin for a scow, an exception to an instruction that, if there was in fact a sale of the scow to defendant and an actual delivery and payment of the price, this constituted a good conveyance without any written bill of sale, on the ground that there was evidence of a conditional sale, did not cover the failure of the court to submit the question whether the seller was the owner of the scow individually or held title as trustee only.

3. Trial ⬡260(5)—Refusal of instruction covered by that given not error.

The refusal of an instruction as to the nature of a person's agency was not error, where the subject-matter was fully covered by the general instructions, to which no exceptions were reserved.

4. Witnesses ⬡393(1)—May be impeached by record of action to which witness was party.

The records in an action, though made up by a party's attorney, were binding upon him, and could be used to discredit him respecting his testimony given in another suit.

5. Appeal and error ⬡1033(3)—Admission of record to impeach witness harmless, where it sustained him.

The admission in evidence of the records in another action for the purpose of discrediting a witness was not prejudicial error, where the record sustained, instead of contradicting, the witness.

6. Witnesses ⬡226—Court in its discretion may permit defendant to make plaintiff's witness his own before plaintiff rests.

It was within the sound discretion of the court to permit defendant to make a witness called by plaintiff his own witness before plaintiff had rested its case.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Action by the Port Wells Mill & Lumber Company, a copartnership composed of T. J. Davis and others, against Charles R. Crawford. Judgment for defendant, and plaintiff brings error. Affirmed.

L. L. James, of San Francisco, Cal., and John Lyons and E. E. Ritchie, both of Valdez, Alaska, for plaintiff in error.

J. L. Reed, of Valdez, Alaska, for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This is an action in replevin to recover the possession of a scow or lighter. The complaint is in the

usual form. The answer, after denying wrongful detention, alleges, in effect, that on or about February 8, 1918, the defendant purchased the scow from one H. E. Ellis, individually, under an agreement as follows:

"That, owing to an uncertainty or doubt then existing as to whether the title to said scow or lighter was in H. E. Ellis individually, or in H. E. Ellis, trustee for the Talkitna Lumber Company, a copartnership, it was agreed that in the event the title thereto was in or determined to be in H. E. Ellis individually, then and in that event said sale was to be absolute; otherwise, and in the event the title to said scow or lighter was in or determined to be in H. E. Ellis, trustee for the Talkitna Lumber Company, then and in that event defendant was to pay for its use and rental the sum of $5 per day."

It is then further alleged that the title, at the time and prior thereto, was in or determined to be in Ellis individually, and not in him as trustee, and that defendant thereby acquired title to the scow, by virtue of which he maintains his right to possession.

In support of this defense, there was evidence tending to show that Ellis had been, previous to the time of the alleged sale to the defendant, trustee for the creditors of the Talkitna Lumber Company, and that some time in August, 1917, he sold the Port Wells mill and its appurtenances to T. J. Davis, one of the partners plaintiff. There arose a dispute as to whether the scow was included in the sale; Ellis claiming it as his individual property, and not so included. Subsequently, about the middle of February, 1918, the parties arrived at a settlement, whereby Davis paid an additional consideration and Ellis gave him a bill of sale of the scow. Ellis thinks the bill of sale was signed by him individually, and not as trustee. Previous to this last transaction, Ellis had negotiations with defendant respecting the sale of the scow to the latter. These negotiations were had between Cuddy, who was representing Ellis, and the defendant. The defendant claims for them that he purchased the scow outright from Ellis, under a bill of sale to which he was entitled, but which was not delivered to him at the time, and that the scow was turned over to him. He relates that a preliminary agreement was presented to him, which contained a clause to the effect that, in case the court held that the lighter did not belong to Ellis individually, he (defendant) was to return it and pay a rental of $5 per day meanwhile; that during the discussion the form was changed somewhat, and as thus changed the document was made to read:

"H. E. Ellis hereby sells and transfers to Chas. R. Crawford a certain scow or lighter, formerly belonging to the Copper River Lumber Company and used later at the Endlund sawmill, for the following consideration: * * * And whereas, Thomas J. Davis, of Cordova, claims said scow as a part of the Endlund sawmill property, which he purchased from said H. E. Ellis in August, 1917: Now, if it shall finally be adjudged by legal proceedings that said Davis is entitled to said scow, Ellis shall [have the] privilege of buying the same from Chas. R. Crawford for the sum of $400. This offer to be in force until May 1, 1917."

The paper was offered and admitted in evidence. Defendant further says, relative to this proposed agreement, that it was never accepted by him, and that he was to receive a bill of sale conveying to him the scow; that one was written out and signed by Ellis, and was

on Cuddy's table at the time the scow was surrendered to him; that he supposed he was not entitled to the bill of sale until he had paid the consideration, and for that reason did not take it with him; that the consideration was $550, $500 of which was shortly afterwards paid to Cuddy, and was placed by him to Ellis' credit.

Cuddy, who was also a witness in the case, differs very materially in his rendition of what occurred. Speaking of the unsigned memorandum, he relates that it was agreed that this was not a finished contract; that it had to be taken to the office of the attorney to have it rewritten, redrafted, and fixed up; and that it was agreed between them that the defendant should sign the written contract. He further states that the contract was never signed, nor was there subsequently, or at any time, any bill of sale drawn or signed by Ellis, as defendant contends; nor was the scow transferred by any such document. There was other testimony bearing upon the subject, but this is sufficient to elucidate the question, which we will now consider.

The court instructed, among other things, as follows:

"You are further instructed that it is not necessary that there should have been a bill of sale in writing to pass the title to this scow from Ellis to Crawford; if you find there was in fact such a sale, that the actual delivery of the scow to Crawford, and the payment by him of the purchase price, and the acceptance thereof by Ellis would constitute a perfectly good conveyance and transfer of the same, without any bill of sale in writing."

Counsel excepted to this instruction, assigning as his reason therefor that—

"There is a great deal of evidence in this case that there was a conditional sale. The jury might be misled to believe, if they found that there was a sale, that it would be an absolute sale, and I desire the court to instruct the jury that it would be a sale unless there was a condition attached to it, in which case the sale would not become absolute until the condition was fully discharged."

The requested further instruction was denied, and error is assigned.

[1, 2] It is apparent from the record that, in any view of the case, no conditional sale was ever contemplated. There was either a sale of the scow by Ellis to defendant, or a leasing of it, or, as is evidenced by the memorandum, a privilege extended to Ellis of repurchasing the scow from the defendant, dependent upon whether it was decided by the court in another proceeding that Davis was entitled to it. So that the question hinged about the matter presented in the answer, namely, whether Ellis was the owner of the scow individually, or held the title as trustee only. If the former, he could lawfully sell to defendant. If the latter, then he had passed the title to Davis. The jury, by implication of its general verdict, was of the view that he was the owner individually, although that particular question does not appear to have been submitted to it under the instruction. But there was no instruction requested covering the point, and no exception taken for want thereof. We do not think the exception taken covers that phase of the controversy. Nor was it designed to. The exception saved was to a supposed controversy about a conditional sale that was not really in the case. There was no error, therefore, in refusing the instruction requested.

[3] The fourth assignment of error, designated as 4a, relates to a requested instruction that the court declined to give. The instruction attempts to define the nature of Cuddy's agency, as it respects Ellis or the defendant, in the transaction of the alleged sale of the scow to defendant. The subject-matter is fully covered by the general instructions, to which no exceptions were reserved. There was, therefore, no assignable error. ·

[4, 5] The first assignment of error relates to the admission by the court, over objection of plaintiff's counsel, of certain court records in the case of George Lacy et al. v. H. E. Ellis. The record was introduced for the purpose of discrediting Ellis, who had been called by plaintiff, and was at the time under cross-examination. Ellis being a party to that case, his attention was called to a certain statement accompanying the record, and he was asked whether it was correct, and answered that he did not believe the statement to be correct. Primarily the record did have a tendency to discredit the witness, and was relevant for the purpose, and was properly admitted. Although Ellis' attorney made up the records in the case, they were nevertheless such as Ellis was responsible for, and were binding upon him, and were such as could be properly used to discredit him respecting his testimony given in his examination in chief. Counsel for defendant concedes that it turned out that in the end this record sustained rather than contradicted Ellis. If so, it was not prejudicial error to introduce it, if otherwise immaterial and irrelevant.

[6] The second assignment relates to the court's granting the defendant permission to make Ellis his own witness, before plaintiff had rested its case. This was a matter within the sound discretion of the court, and there was no error.

The other assignments of error, namely, 3, 4, and 6, appear to us to be without merit.

Affirmed.